# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT, PENNSYLVANIA

| | |
|---|---|
| A.W., a minor, by JENNIFER HANNULA, her mother; JENNIFER HANNULA, Individually; and by ADAM WEMMER, her father; ADAM WEMMER, Individually, PLAINTIFFS | NO. |
| ATTORNEY FOR PLAINTIFFS:<br>Edward E. Kopko,  No. 25582<br>Edward E. Kopko, Lawyer, P.C.<br>308 N. Tioga Street, Second Floor, Ithaca, New York 14850<br>Telephone 607-269-1300 Telecopy 607-269-1301<br>eek@kopkolaw.com | **JURY TRIAL DEMANDED** |
| **V.** | **CERTIFICATE OF MERIT** |
| THE ROBERT PACKER HOSPITAL; ALEXANDER J. PINSKY, M.D., and KAREN EPHLIN, M.D., <br> DEFENDANTS | |

I, Edward E. Kopko, attorney for Plaintiffs, A.W., Jennifer Hannula and Adam Wemmer, certify that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing the harm.

Edward E. Kopko, Lawyer, P.C.

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.
308 N. Tioga Street, 2nd Floor
Ithaca, New York 14850
T: 607.269.1300; F: 607.269.1301
eek@kopkolaw.com
Wednesday, November 10, 2010

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT, PENNSYLVANIA

| | |
|---|---|
| A.W., a minor, by JENNIFER HANNULA, her mother; JENNIFER HANNULA, Individually; and by ADAM WEMMER, her father; ADAM WEMMER, Individually, PLAINTIFFS | NO. |
| ATTORNEY FOR PLAINTIFFS:<br>Edward E. Kopko,  No. 25582<br>Edward E. Kopko, Lawyer, P.C.<br>308 N. Tioga Street, Second Floor, Ithaca, New York 14850<br>Telephone 607-269-1300 Telecopy 607-269-1301<br>eek@kopkolaw.com | **JURY TRIAL DEMANDED** |
| **V.** | **SECOND AMENDED COMPLAINT** |
| THE ROBERT PACKER HOSPITAL; ALEXANDER J. PINSKY, M.D., and KAREN EPHLIN, M.D.,<br> DEFENDANTS | |

The plaintiffs, A.W., Jennifer Hannula, and Adam Wemmer, by their attorney, Edward E. Kopko, complain against the defendants upon causes of action stated as follows:

INTRODUCTION

This medical malpractice action arose during a course of treatment by the defendants for failure to diagnose and treat infant plaintiff, A.W., with microcephaly.

JURISDICTION AND VENUE

Pursuant to 28 U.S.C. § 1332, the plaintiffs invoke the diversity jurisdiction of this Court since all of the plaintiffs are citizens of the State of the New York and all of the defendants are citizens or corporations of the Commonwealth of Pennsylvania and the amount in controversy exceeds seventy-five thousand dollars.

Of the acts and omissions of the defendants occurred in the Middle District of Pennsylvania.

**IDENTITY OF THE PARTIES**

1. A.W. is an infant residing in Tioga County, New York.  A.W. is a citizen of the State of New York.

2. Jennifer Hannula (Hannula), is an adult individual and mother of A.W. residing in Tioga County, New York. Hannula is a citizen of the State of New York.

3. Adam Wemmer (Wemmer) is an adult individual and father of A.W. residing in Tioga County, New York. Wemmer is a citizen of the State of New York.

4. Robert Packer Hospital (Robert Packer) is a domestic not-for-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business in Bradford County, Pennsylvania.

5. Alexander J. Pinsky, M.D. (Pinsky) is an adult individual and a pediatric doctor, holding Pennsylvania license Number: MD417682, and is a resident of Pennsylvania with a residential address of 99 Golf Hill Road, Honesdale, Pennsylvania 18431.  Pinsky is a citizen of the Commonwealth of Pennsylvania.

6. At all times relevant to the allegations contained in this complaint, Pinsky was an agent or employee of Robert Packer working as a doctor specializing in pediatrics and working on the maternity department with the knowledge and consent of Robert Packer and within the nature and scope of his employment with Robert Packer.

7. Alternatively, if Pinsky was not the agent or employee of Robert Packer, at all times relevant to the allegations in this complaint, Pinsky was the ostensible agent for Robert Packer.

8. Karen Ephlin, M.D. (Ephlin) is an adult individual and a pediatric doctor, holding Pennsylvania License No. MD426154, and is a resident of Pennsylvania with a residential address of 140 Washington Street, Sayre, Pennsylvania 18840. Ephlin is a citizen of the Commonwealth of Pennsylvania.

9. At all times relevant to the allegations contained in this complaint, Ephlin was an agent or employee of Robert Packer working as a doctor specializing in pediatrics and working on the maternity department with the knowledge and consent of Robert Packer and within the nature and scope of her employment with Robert Packer.

10. Alternatively, if Ephlin was not the agent or employee of Robert Packer, at all times relevant to the allegations in this complaint, Ephlin was the ostensible agent for Robert Packer.

ACTS COMMON TO ALL CLAIMS

11. Beginning in January 2005 and continuing through at least December 2005, authorized agents and employees of Robert Packer provided prenatal and pediatric healthcare to Hannula during her pregnancy with A.W..

12. Hannula went into labor on August 13, 2005 with a spontaneous rupture of her membranes which occurred at approximately 9:15 p.m.

13. Hannula was admitted into Robert Packer at 40 weeks, 1 day gestation at approximately 10:15 p.m.

14. On August 14, 2005 at approximately 4:41 a.m., Hannula gave birth to A.W. who was described in the placenta pathology report as "Term pregnancy, baby very small, floppy at birth with minimal respiratory effort."

CLINICAL INFORMATION:
    Pre Op Dx:     TERM PREGNANCY, BABY VERY SMALL, FLOPPY AT BIRTH
    WITH MINIMAL RESPIRATORY EFFORT

15. A.W. was "bagged" for 90 seconds and then a shot of Narcan was administered to reverse the effects of the Stadol in her system.



16. A.W.'s Apgar scores at birth were 7 at 1 minute, 5 at 5 minutes, and 9 at 10 minutes.

17. The Robert Packer Newborn Nursery Admission form states that A.W. was 5lbs 6oz, 20 inches long, had a head circumference of 30 ½ cm and a chest circumference of 30 ½ cm.

18. When plotted on a growth chart, A.W.'s weight and head circumference was <10th percentile, or "small for gestational age," and her height was in the 80th percentile.



19. A head circumference in the <10th percentile indicates profound microcephaly that the defendants failed to note in her medical record.

20. In February of 2006, Jennifer presented for an eye appointment with Dr. Ovodovitz, MD where he noticed that A.W. had a wandering eye.

21. On February 16, 2006, A.W. was seen by Dr. Ovodovitz for follow up which was the first indication of a developmental delay.

22. From March 14, 2006 through March 19, 2007, A.W. underwent routine child health exams at Northeast Pediatrics in Ithaca, New York.

23. On July 6, 2006, A.W. was seen at the Tioga County Intervention Program and diagnosed with a "significant delay" under the "Physical (fine & gross motor)" category.

| Section I FUNCTIONAL AREA | DEVELOPMENTAL STATUS* | METHOD OF DETERMINATION |
|---|---|---|
| Adaptive | A | T |
| Cognitive | A | T |
| Communication | A | T |
| Social/Emotional | A | T |
| Physical (fine & gross motor) | B | T |

*<u>A</u> - No Delay    <u>B</u> - 2+ S.D. below mean (alone)    <u>C</u> - 1.5+ S.D. below mean (need 2)
<u>D</u> - 12 mo. or more delay (alone)    <u>F</u> - 33%+ Delay (alone)    <u>G</u> - 25% Delay+ (need 2)
<u>H</u> - suspect (for screenings only)    <u>I</u> - Slight Delay    <u>J</u> - NA/Supplemental Eval
**<u>T</u> - Standard Test    <u>P</u> - Professional Judgement

24. A.W. began physical therapy with Child's Play Occupational Therapy, PLLC on a weekly basis beginning on September 20, 2006.

25. A.W. was evaluated on January 6, 2007 by Dr. Patricia L. Ward, RPT who concluded that she had a 51% delay.

**CURRENT STATUS:**
    [          ] was tested using the Peabody Developmental Motor Scales to assess gross motor skills. Her basal level ( passed all the criteria) is 6-7 months. Her ceiling level (passed one or none of the criteria) is 10-11 months. Her age equivalent is 8 months. This represents a 8.5 month or 51% delay. Mom was present for testing

26. On April 11, 2007, A.W. was fitted for ankle braces by Klemmt Orthopaedic Services.

27. On October 4, 2007, A.W. was referred to the Franziska Racker Centers for her communication skills delays in development.

28. On February 14, 2008, A.W. is seen by the Broome Developmental Disabilities Services Office and was evaluated by psychologist Nina Walter, M.A. who concluded that A.W. was eligible for the early intervention program.

29. On November 11, 2008, A.W. was evaluated by Stephen B. Sulkes, M.D. at the University of Rochester Medical Center wherein he noted her weight in the 10th percentile, height in the 25th percentile and head circumference in the 5th percentile.

> **Physical Exam:** On physical exam, ☐ weighed 12.5 kg (27.5 lb, 10th %ile) and was 93.0 cm tall (36.6 in. 25th %ile). Her head circumference was 46.8 cm (5th %ile). There was no skin rash or abnormal pigmentation. Cranial

30. On November 11, 2008, A.W. was diagnosed with cerebral palsy and global developmental delay by Stephen B. Sulkes, M.D.

31. On or about August 1, 2010, Jonathan Muraskas, M.D. concluded, in a written report that forms the basis for the Certificate of Merit, that A.W. suffered from profound microcephaly as a direct and proximate cause of the departure from the standard of care as more specifically stated in this complaint.

### A.W. v. Pinsky, medical malpractice

32. All of the allegations of the complaint are incorporated.

#### STANDARD OF CARE AND DEVIATION FROM STANDARD OF CARE

33. The standard of care of good medical practice for the specialty of pediatric medicine required Pinsky to diagnose A.W. with microcephaly at birth when she presented with a head circumference of 30.5 cm at full term.

a) Pinsky breached the duties imposed upon Pinsky by the standard of care owed to A.W. by failing to diagnose her with microcephaly when presenting with a head circumference of 30.5 cm at full term.

34. The standard of care of good medical practice for the specialty of pediatric medicine required Pinsky to refer A.W. to a developmental specialist for early intervention which would have significantly improved A.W.'s motor and neurodevelopmental outcome.

a) Pinsky breached the duties imposed upon Pinsky by the standard of care owed to A.W. by failing to refer A.W. to a developmental specialist for early intervention which would have significantly improved A.W.'s motor and neurodevelopmental outcome.

## PROXIMATE CAUSE

35. Pinsky's breaches of the duty of care as set forth in this Complaint were substantial factors in causing A.W.'s delay in receiving proper and appropriate treatment for her developmental delay due to her profound microcephaly that went undiagnosed at birth by Pinsky.

## DAMAGES

36. As a direct and proximate result of the negligence of Pinsky, A.W. has been delayed in her treatment and early intervention of cerebral palsy and microcephaly.

37. As a direct and proximate result of the negligence of Pinsky, A.W. has suffered, and will continue to suffer mental and physical pain.

38. As a direct and proximate result of the negligence of Pinsky, A.W. will continue to incur medical expenses.

39. As a direct and proximate result of the negligence of Pinsky, A.W. will incur a life-long diminution in earning capacity and earnings.

Wherefore, the Plaintiffs, A.W. Wemmer, Infant Plaintiff by Jennifer Hannula and Adam Wemmer, demands judgment against the defendants, jointly and severally, in an amount that exceeds seventy-five thousand dollars, together with costs and disbursements of this action, and for such other and further relief as this Court deems proper.

## A.W. v. Ephlin, MEDICAL MALPRACTICE

40. All of the allegations of the complaint are incorporated.

### STANDARD OF CARE AND DEVIATION FROM STANDARD OF CARE

41. The standard of care of good medical practice for the specialty of pediatric medicine required Ephlin to diagnose A.W. with Microcephaly at birth when she presented with a head circumference of 30.5 cm at full term.

   a) Ephlin breached the duties imposed upon Ephlin by the standard of care owed to A.W. by failing to diagnose her with Microcephaly when presenting with a head circumference of 30.5 cm at full term.

11

42. The standard of care of good medical practice for the specialty of pediatric medicine required Ephlin to refer A.W. to a developmental specialist for early intervention which would have significantly improved A.W.'s motor and neurodevelopmental outcome.

   a) Ephlin breached the duties imposed upon Ephlin by the standard of care owed to A.W. by failing to refer A.W. to a developmental specialist for early intervention which would have significantly improved A.W.'s motor and neurodevelopmental outcome.

**PROXIMATE CAUSE**

43. Ephlin's breaches of the duty of care as set forth in this Complaint were substantial factors in causing A.W.'s delay in receiving proper and appropriate treatment for her developmental delay due to her profound Microcephaly that went undiagnosed at birth by Ephlin.

**DAMAGES**

44. As a direct and proximate result of the negligence of Ephlin, A.W. has been delayed in her treatment and early intervention of Cerebral Palsy and Microcephaly.

45. As a direct and proximate result of the negligence of Ephlin, A.W. has suffered, and will continue to suffer mental and physical pain.

46. As a direct and proximate result of the negligence of Ephlin, A.W. will continue to incur medical expenses.

47. As a direct and proximate result of the negligence of Pinsky, A.W. will incur a life-long diminution in earning capacity and earnings.

Wherefore, the Plaintiffs, A.W. Wemmer, Infant Plaintiff by Jennifer Hannula and Adam Wemmer, demands judgment against the defendants, jointly and severally, in an amount that exceeds seventy-five thousand dollars, together with costs and disbursements of this action, and for such other and further relief as this Court deems proper.

### A.W. v. ROBERT PACKER HOSPITAL, VICARIOUS LIABILITY, RESPONDEAT SUPERIOR; NEGLIGENCE

48. All of the allegations of the complaint are incorporated.

49. From August 13, 2006, until August 15, 2006, Pinsky was an employee of Robert Packer working as a pediatric doctor, with the knowledge and consent of Robert Packer and within the nature and scope of his employment with Robert Packer when providing care and treatment to A.W..

50. From August 13, 2006, until August 15, 2006, Ephlin was an employee of Robert Packer working as a pediatric doctor, with the knowledge and consent of Robert Packer and within the nature and scope of his employment with Robert Packer when providing care and treatment to A.W..

51. Robert Packer is vicariously liable to A.W. for damages for the acts of Pinsky and Ephlin as set forth in this Complaint under the doctrine of respondeat superior.

52. ROBERT PACKER failed to use reasonable care in supervising Pinsky and Ephlin.

53. ROBERT PACKER failed to use reasonable care in supervising and controlling the operations of the Maternity Department.

54. ROBERT PACKER failed to use reasonable care in hiring Pinsky and Ephlin.

55. ROBERT PACKER failed to use reasonable care in allowing Pinsky and Ephlin to provide medical services to its Maternity Department patients.

56. ROBERT PACKER failed to use reasonable care to promulgate appropriate procedures for the diagnosis and treatment of the conditions presented by A.W..

57. ROBERT PACKER failed to use reasonable care to promulgate appropriate procedures for the referral of A.W. for appropriate medical evaluation and treatment.

58. ROBERT PACKER failed to use reasonable care to provide appropriate medical screening examinations for the conditions presented by A.W..

59. ROBERT PACKER failed to use reasonable care to train Pinsky and Ephlin to recognize the conditions presented by A.W. and to train them to make a diagnosis and evaluation appropriate to treat A.W..

60. ROBERT PACKER failed to use reasonable care to protect A.W. from the unwarranted acts or omissions of Pinsky and Ephlin.

61. ROBERT PACKER failed to use reasonable care to monitor A.W.'s condition during the course of Hannula's pregnancy to diagnose A.W.'s condition.

62. The actions and omissions of ROBERT PACKER were substantial factors in causing the damages and injuries sustained by A.W. as more specifically described in this complaint.

Wherefore, the Plaintiffs, A.W. Wemmer, Infant Plaintiff by Jennifer Hannula and Adam Wemmer, demands judgment against the defendants, jointly and severally, in an amount that exceeds seventy-five thousand dollars, together with costs and disbursements of this action, and for such other and further relief as this Court deems proper.

### HANNULA V. ALL DEFENDANTS

### NEGLIGENCE

63. All of the allegations are incorporated.

64. Hannula is the natural mother of A.W..

65. As a direct and proximate cause of the acts and omissions of the defendants, Hannula suffered injury and losses, including monetary loss, loss of companionship, and mental anguish.

66. The acts and omissions of the defendants were substantial factors in causing the damages and injuries sustained by Hannula as more specifically described in the complaint.

Wherefore, the Plaintiff, Jennifer Hannula, demands judgment against the defendants, jointly and severally, in an amount that exceeds seventy-five thousand dollars, together with costs and disbursements of this action, and for such other and further relief as this Court deems proper.

### WEMMER V. ALL DEFENDANTS

#### NEGLIGENCE

1. All of the allegations are incorporated.
2. Wemmer is the natural father of A.W..
3. As a direct and proximate cause of the acts and omissions of the defendants, Wemmer suffered injury and losses, including monetary loss, loss of companionship, and mental anguish.

4. The acts and omissions of the defendants were substantial factors in causing the damages and injuries sustained by Wemmer as more specifically described in the complaint.

Wherefore, the Plaintiff, Adam Wemmer, demands judgment against the defendants, jointly and severally, in an amount that exceeds seventy-five thousand dollars, together with costs and disbursements of this action, and for such other and further relief as this Court deems proper.

Edward E. Kopko, Lawyer, P.C.

Edward E. Kopko, Atty. for Plaintiffs, Atty. Reg. No. 25582
308 N. Tioga St, Second Floor
Ithaca, New York 14850
607-269-1300; 607-269-1301 (fax)
eek@kopkolaw.com
Wednesday, November 10, 2010